IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 09-cv-02666-WDM-BNB

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Maryland corporation,

    Plaintiff,

v.

DAVID L. BROWN, individually,
AMANDA L. BROWN, individually,
STACEY MOORE, individually and as mother and next friend of Caleb Moore,
CALEB MOORE, individually, and
JEREMY VIALPANDO, individually,

    Defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Miller, J.

This case is before me on the Motion for Summary Judgment (ECF No. 10) filed by Defendants Stacey Moore, Caleb Moore, and Jeremy Vialpando (the "Moore/Vialpando Defendants"), and on the Motion for Partial Summary Judgment (ECF No. 22) filed by Plaintiff Government Employees Insurance Company ("GEICO"). These parties oppose the other's motions; however, Defendants David L. Brown and Amanda L. Brown (the "Insureds") have not stated their positions on any of the issues raised. I have reviewed the parties' written arguments and the evidence submitted with their briefs. For the reasons that follow, motion filed by the Moore/Vialpando Defendants will be denied and GEICO's motion will be granted.

Background[1]

This is an insurance dispute. GEICO seeks a declaration that there is no coverage for the Insureds for claims asserted against them by the Moore/Vialpando Defendants in state court actions filed in El Paso County, Colorado (the "Underlying Lawsuits").

GEICO issued a Colorado Family Automobile Insurance Policy to the Insureds (the "Policy") with effective dates from May 15, 2007 to November 15, 2007. Policy, Exh. 1 to GEICO's Mot. for Summ. J., ECF No. 22-1. The Insureds' son, A.J. Brown ("AJ") was identified on the Policy's Declarations as an "operator." *Id.* The Underlying Lawsuits arise out of a tragic incident occurring around November 5, 2007 involving AJ.

According to the complaints in the Underlying Lawsuits, AJ had recently ended a relationship with a young woman. Complaint, *Moore v. Brown*, Case No. 2009CV5583,[2] Exh. 2 to GEICO's Mot. for Summ. J., ECF No. 22-2, ¶ 5. Agitated, he made threats against the young woman and anyone she was associated with. *Id.* ¶ 6. On November 5, 2007, AJ came to the young woman's home and demanded to be let in, which she refused. *Id.* ¶ 7. The young woman then called Vialpando for help; at the time of the call, Vialpando was with Caleb Moore and two other friends. *Id.* ¶¶ 10-11. Vialpando, Moore, and the others then drove to the young woman's home and she got into their vehicle, a Ford Explorer. *Id.* ¶ 12. The complaints then allege that AJ "began pursuing them" in a vehicle owned by the Insureds and covered by the Policy. *Id.* ¶ 14. AJ allegedly brandished a

---

[1]The following facts are taken from the parties' briefs and attached exhibits and are undisputed unless otherwise noted.

[2]The complaint in *Vialpando v. Brown*, Case No. 2009CV6388, contains identical allegations. Exh. 3 to GEICO's Mot. for Summ. J., ECF No. 22-3.

shotgun.  *Id.* ¶ 15.  AJ "struck the rear of the Ford Explorer with the front of the 1989 Chevrolet Suburban which he was driving." *Id.* ¶ 16.  Thereafter, AJ "maneuvered the 1989 Chevrolet Suburban alongside the Ford Explorer; at that point, he aimed the shotgun and fired" and "[t]he shotgun pellets shattered the left passenger window . . . ." *Id.* ¶ 17.  The complaints allege that Caleb Moore and Vialpando each suffered significant physical and emotional injuries.  *Id.*  AJ thereafter committed suicide.

In general, the Policy provides that GEICO "will pay damages which an insured becomes legally obligated to pay because of . . . bodily injury, sustained by a person, and . . . damage to or destruction of property, arising out of the ownership, maintenance or use of the owned auto or a non-owned auto."  Policy, Exh. 1 to GEICO's Mot. for Summ. J., ECF No. 22-1, at 3 of 15.  However, among the listed exclusions to coverage is the following: "Bodily injury or property damage caused intentionally by or at the direction of an insured is not covered."  *Id.* at 4 of 15.

In the Underlying Lawsuits, Vialpando and the Moores assert claims against AJ's parents, the Insureds, based on negligent entrustment.  Underlying Lawsuit Complaints, Exhs. 2 and 3 to GEICO's Mot. for Summ. J., ECF Nos. 22-2 and 22-3.  GEICO then filed a complaint for declaratory judgment in this court to establish that there is no coverage, including no right of defense or indemnity, for the Insureds for damages claimed in the Underlying Lawsuits.  GEICO's position is based on the intentional conduct exclusion in the Policy, which GEICO asserts precludes coverage for damages and injuries arising from AJ's acts while operating the covered vehicle.  The Vialpando/Moore Defendants contend that the exclusion is void as against public policy.

Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Jurisdiction in this matter is based on diversity. 28 U.S.C. § 1332. Therefore, as the parties agree, I apply the law of Colorado in resolving the issues. *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006).

Discussion

1.    <u>Exclusion for Intentional Conduct and Colorado Public Policy</u>

I first examine the issue of whether the intentional conduct exclusion in the Policy is contrary to the public policy of the State of Colorado, as reflected in its statutes and other court decisions relating to automobile insurance coverage. Upon review of the arguments and authorities presented by the parties, I conclude that the exclusion does not violate public policy and is not void.[3]

Under Colorado law, every owner of a motor vehicle who operates or permits the operation of the vehicle on public roads is required to have liability insurance. C.R.S. § 10-4-619. Minimum coverages are set by statute, which require that a policy contain "legal liability coverage for bodily injury or death arising out of the use of the motor vehicle to a limit, exclusive of interests and costs, of twenty-five thousand dollars to any one person in any one accident and fifty thousand dollars to all persons in any one accident," as well as

---

[3] No party has suggested that this specific legal issue, for which there is no controlling precedent in Colorado, be certified to the Colorado Supreme Court pursuant to Rule 21.1 of the Colorado Appellate Rules. I conclude that existing Colorado precedent provides adequate guidance to decide the case without such certification.

for property damage "arising out of the use of the motor vehicle to a limit, exclusive of interests and costs, of fifteen thousand dollars in any one accident." C.R.S. § 10-4-620. In a related statute addressing penalties and other provisions for the failure to comply with the insurance requirements, the legislative intent of the mandatory insurance scheme is set forth:

> The general assembly is acutely aware of the toll in human suffering and loss of life, limb, and property caused by negligence in the operation of motor vehicles in our state. Although it recognizes that this basic problem can be and is being dealt with by direct measures designed to protect our people from the ravages of irresponsible drivers, the general assembly is also very much concerned with the financial loss visited upon innocent traffic accident victims by negligent motorists who are financially irresponsible. In prescribing the sanctions and requirements of this article, it is the policy of this state to induce and encourage all motorists to provide for their financial responsibility for the protection of others, and to assure the widespread availability to the insurance public of insurance protection against financial loss caused by negligent financially irresponsible motorists.

C.R.S. § 47-2-102.

The required coverages may be subject to "conditions and exclusions that are not inconsistent" with the statute. C.R.S. § 10-4-623(1). Two exclusions are specifically permitted by law: (1) where the injured person sustains injury caused by his or her own intentional act; and (2) where the injured person is operating a motor vehicle as a converter without a good faith belief that he or she is legally entitled to operate or use such vehicle. C.R.S. § 10-4-623(2).

Colorado courts have previously addressed other policy exclusions with differing results depending on the exclusion. In *Meyer v. State Farm Mut. Auto. Ins. Co.*, 689 P. 2d 585 (Colo. 1984), the Colorado Supreme Court examined insurance provisions that

5

purported to exclude coverage for bodily injury to any member of the family of an insured driver residing in the same household as the insured, referred to as the "household exclusion" clause.[4] The Court determined that such an exclusion "effectively renders [petitioners], and other motor vehicle operators in like circumstances, uninsured and thereby causes them to be in violation of the legislatively mandated public policy of compulsory liability insurance required by the Act." *Id.*, 689 P.2d at 589. The Court quoted the Washington Supreme Court, which ruled similarly: "This clause prevents a specific class of innocent victims, those persons related to and living with the negligent driver, from receiving financial protection under an insurance policy containing such a clause. In essence, this clause excludes from protection an entire class of innocent victims for no good reason." *Id.* at 590 (quoting *Mut. of Enumclaw Ins. Co. v. Wiscomb*, 97 Wash. 2d 203, 643 P.2d 441, 444 (1982)). Noting that this class of victims is the most likely to be exposed to the potential negligence of the named insured, the opinion goes on to observe that such victims should be entitled to seek adequate compensation for injuries sustained under the driver's liability policy. *Meyer*, 689 P.2d at 590. After examining its own case law and that of other jurisdictions, the Court concluded as follows: "The exclusion is neither authorized by statute nor in harmony with the legislative purpose mandating liability insurance to provide coverage for bodily injury and property damages to avoid inadequate compensation to victims of automobile accidents." *Id.* at 592.

After the *Meyer* decision, the statute was modified to permit such exclusions.

---

[4]At the time, Colorado had a "no-fault" insurance statute, now repealed, which required motorists to have no-fault, or personal injury protection ("PIP"), coverage as well as liability insurance. Although the PIP portion of the statute has been repealed, the liability coverage statutory provisions were similar to those in effect now.

6

Thereafter, the Colorado Supreme Court addressed another exclusion, for "liability for bodily injury to an insured person." *Farmers Ins. Exch. v. Dotson*, 913 P.2d 27 (Colo. 1996). The Court again determined that such exclusions "are contrary to the public policy of this state as reflected [in the statute]." *Id.* at 30. The Court noted that an insurance provision may be void and unenforceable if it violates public policy by attempting to "dilute, condition, or limit statutorily mandated coverage." *Id.* (citation omitted). The legislative declaration showed that the intent of the statute "is to avoid inadequate compensation to victims of automobile accidents." *Id.* The Court concluded that its decision in *Meyer* had invalidated named insured exclusion clauses and the legislative change permitting household exclusion clauses did not extend to named insured exclusions. *Id.* at 34.

Another recent case striking down an exclusion in a liability policy is *St. Paul Fire & Marine Ins. Co. v. Mid-Century Ins. Co.*, 18 P.3d 854 (Colo. App. 2001). At issue was an exclusion for a vehicle used in employment by any person "whose primary duties are the delivery of products or services." 18 P.3d at 855. The division of the Colorado Court of Appeals determined that the no-fault statute required permissive users of a vehicle to be covered by liability policies and that this exclusion narrowed "the class of insureds to whom the insurer is required to provide coverage, namely, permissive users." *Id.* at 855-56. Because the exclusion thereby diluted or limited the statutorily mandated coverage, it was contrary to the statute and therefore invalid. *Id.* at 856.

Referring to these decisions, the Vialpando/Moore Defendants argue that the intentional act exclusion is likewise invalid under *Meyer* and its progeny, arguing that the intentional acts exclusion "denies coverage to a class of injury victims who are entitled to full compensation according to Colorado public policy." Vialpando/Moore Mot. for Summ.

7

J., ECF No. 10, at 13.

In response, GEICO argues that the statute at issue and the legislative intent behind it is designed to ensure that motorists are covered for liability resulting from <u>negligent</u> acts, as shown by the statutory language emphasizing "accidents" and the costs imposed by negligent operation of a motor vehicle. Therefore, GEICO argues, an exclusion for intentional conduct does not improperly limit or narrow the statutorily mandated coverage. In addition, GEICO notes that Colorado has a well-established public policy of not providing coverage for intentional or willful misconduct in other contexts, such as homeowners' and business liability policies, and that this policy would extend to motor vehicle liability coverage. *See, e.g., Am. Family Mut. Ins. Co. v. Johnson,* 816 P.2d 952, 957 (Colo. 1991) (holding that intentional act exclusion in homeowners' policy is valid and consistent with Colorado public policy and noting that the purpose of such exclusions "is to prevent extending to the insured a license to commit harmful, wanton, or malicious acts.").

Arguably, this case may present a conflict of two important state interests: (1) not indemnifying wrongdoers for damages caused by their intentionally harmful actions; and (2) ensuring that all motorists are covered by a policy of liability insurance sufficient to protect innocents from financial loss. The cases dealing with each policy emphasize the compelling interests of each but offer little guidance for determining how a Colorado court would decide whether they truly conflict, and, if so, whether one should override the other. Nonetheless, examining the statutory framework and the case law discussed above, I conclude that no real policy conflict exists.

In construing a statute, my primary duty is to "give effect to the intent of the General Assembly, looking first to the statute's plain language. If a statute is clear and unambiguous

on its face, then [I] need not look beyond the plain language...." *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004) (citation omitted). As noted by GEICO, the emphasis of the mandatory liability insurance statute is the provision of an adequate insurance base to cover the inevitable costs caused by negligence of motor vehicle drivers. *See* C.R.S. § 47-2-102 ("it is the policy of this state to induce and encourage all motorists to provide for their financial responsibility for the protection of others, and to assure the widespread availability to the insurance public of insurance protection against financial loss caused by <u>negligent</u> financially irresponsible motorists.") (emphasis added). Policy exclusions are permitted provided they do not conflict with the statute. C.R.S. § 10-4-623(1). I conclude that the intentional conduct exclusion does not conflict with the statute, which sets forth mandatory minimum coverage for bodily injury and property damage caused by an <u>accident</u> involving a motor vehicle. Our legal system is replete with the distinctions between intentional and unintentional, that is, negligent or accidental, conduct. Just as manslaughter is not equated with murder, conduct that intentionally causes such bodily injury cannot fairly be considered a negligent act or an accident. Nothing in the statute indicates that the general assembly concluded that Colorado policy mandated coverage of injuries caused by such intentional conduct.

GEICO also cites case law from other jurisdictions that have upheld such exclusions despite mandatory motor vehicle insurance laws. *Williams v. Diggs*, 593 So. 2d 385 (Ct. App. La., 1991) ("Weighing these two policies, we conclude than an intentional injury exclusion . . . does not violate public policy. We do not believe the Legislature intended to mandate coverage for such injuries in view of the strong policy against allowing persons to insure themselves against liability for injuries they intentionally inflict."); *Allstate Ins. Co.*

9

*v. Malec*, 514 A.2d 832, 835-6 (N.J. 1986) (enactment of No-Fault statute and mandatory insurance scheme did not modify state's system of liability insurance, including general policy of "not indemnifying against the consequences of one's own wrongful acts"); *see also State Farm Mut. Auto. Ins. Co. V. Wertz*, 540 N.W.2d 636, 641 (S.D. 1994) (intentional act was not an "accident" under insurance policy; mandatory motor vehicle insurance statute did not require insurer to cover intentional wrongful acts, given public policy prohibiting "contracts which relieve intentional wrongdoers of responsibility"). I find these cases to be persuasive in light of the discussion above.

Although this means that innocents such as the Vialpando/Moore Defendants may not be adequately compensated, it appears that Colorado courts have determined that this is outweighed by the state's interest in not permitting wrongdoers to insure against their own intentional misconduct. *See Johnson*, 816 P.2d at 957. Only one Colorado case cited by the parties addresses the possible effect of such exclusions on innocents. In *Lincoln Gen. Ins. Co. v. Bailey*, 224 P.3d 336 (Colo. App. 2009), a division of the Colorado Court of Appeals analyzed whether a provision in a supplemental liability insurance policy prohibiting coverage if the vehicle was used "for any illegal purposes, or in the commission of a crime that could be charged as a felony" violated public policy. The claimant in the case was an innocent motorist who was injured and whose child was killed when the insured led police officers on an extended high speed chase that ended in a head-on collision with the claimant's vehicle. The division considered and rejected the argument that the crime exclusion violated Colorado's public policy of compensating innocent victims of motor vehicle accidents, noting that crime exclusions in homeowners' policies were permissible, *see Allstate Ins. Co. v. Juniel,* 931 P.2d 511, 516 (Colo. App. 1996), and the

10

lack of any case law from other jurisdictions finding that crime exclusions violated public policy. *Bailey*, 224 P.3d at 340-41.[5] Accordingly, under Colorado law as it exists at this time, I conclude that the intentional conduct exclusion in the policy is not in violation of the mandatory liability insurance statute or the state's public policy.

2.  Application of Intentional Conduct Exclusion

Having resolved the policy issue, I turn to the ultimate question of whether GEICO is entitled to summary judgment declaring that the intentional acts exclusion bars coverage for the Insureds in the Underlying Lawsuits.

"An insurance policy is a contract which should be interpreted consistently with the well settled principles of contractual interpretation." *Chacon v. Am. Family Mut. Ins. Co.*, 788 P. 2d 748, 750 (Colo. 1990). Words in the policy should be given their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended. *Id.* If a contractual provision is ambiguous, that is, if it is reasonably susceptible to different meanings, it must be construed against the drafter and in favor of providing coverage to the insured. *Id.*

An insurer seeking to avoid a duty to defend has a "heavy burden." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999). If the insurer claims that coverage does not exist because of an exclusion, the insurer "must establish that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other

---

[5]The Colorado Supreme Court has granted a writ of *certiorari* in the *Bailey* case and will review, with other issues, whether the lower courts erred in finding that the crime exclusion in a supplemental liability policy was not contrary to public policy "because the policy of fair compensation for innocent victims should override the crime exclusion under the circumstances of this case." *Bailey v. Lincoln Gen. Ins. Co.*, 2010 WL 597816 (Colo. Feb. 22, 2010).

reasonable interpretation." *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1090 (Colo. 1991). "An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." *Id.* The duty to defend is determined by looking at the allegations of the underlying complaint against the insured and extrinsic evidence is not to be considered. *Compass*, 984 P.2d at 615. Nonetheless, ambiguity should be determined based on the facts and circumstances presented in a particular case. *TerraMatrix, Inc. v. United States Fire Ins. Co.,* 939 P.2d 483, 487 (Colo. App. 1997). My interpretation of an insurance contract is a matter of law. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).

GEICO argues that the allegations in the Underlying Complaints describe intentional conduct by AJ, an insured under the policy. Therefore, GEICO contends, because all injuries allegedly suffered by the Vialpando/Moore Defendants were caused by AJ's intentional conduct, the exclusion applies. I agree.

As set forth above, the exclusion bars coverage for "[b]odily injury or property damage caused intentionally by or at the direction of an insured." The Underlying Complaints allege that an "agitated" AJ "pursued" the victims, "brandished a shotgun," struck their vehicle, maneuvered his vehicle so that he was adjacent, "aimed the shotgun and fired" into the vehicle containing Vialpando and Moore. The injuries suffered by Moore were allegedly caused "by flying glass from this shotgun blast," including a serious eye injury. Vialpando was allegedly injured by shotgun pellets that hit his head and caused significant neurological damage.

AJ's conduct was plainly intentional in that he knowingly pursued the victims, struck

their vehicle with his, placed his vehicle in a position so that he could shoot, and then aimed and fired the weapon. These actions in combination cannot be considered to have been accidental or merely negligent. There is also no question but that by firing a shotgun at close range into a vehicle full of passengers AJ intended to inflict injuries on some or all of those persons. *See Lopez v. Am. Family Mut. Ins. Co.,* 148 F.3d 438, 439 (Colo. App. 2006) (concluding that it may be inferred that "when an individual deliberately aims a loaded BB gun at someone and pulls the trigger, the shooter intends or expects to cause some harm."). Moreover, as GEICO notes, whether AJ intended to harm Vialpando or Moore specifically is immaterial, in that an intentional act exclusion applies even where the person injured is not someone to whom the insured directed his action or conduct if the insured nonetheless intended some act or injury to occur. *Johnson*, 816 P.2d at 955. Accordingly, the injuries fall within the exclusion.

I am also persuaded by the authority cited by GEICO that the exclusion applies as well to the Insured parents, whose conduct is alleged to have been only negligent. Under Colorado case law, where an exclusion applies to damage intentionally caused by "any insured," coverage is precluded for all insureds under the policy. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 752 (Colo. 1990) (homeowners' policy which contained intentional act exclusion did not provide coverage for property damage intentionally caused by insureds' minor son, where policy defined "insured" to include son). I agree that in these circumstances, GEICO's exclusion for damage caused intentionally by or at the direction of "an insured" has a similar meaning as "any insured" and so the rule established in *Chacon* would apply here.

The Vialpando/Moore Defendants do not dispute that AJ is an "insured" under the

13

policy but contend there is ambiguity in the exclusion phrases. First, the Vialpando/Moore Defendants point to the entire exclusion section, as follows:

> **EXCLUSIONS**
>
> **When Section I** [insuring provisions] **Does Not Apply**
>
> We will not defend any suit for damage if one or more of the exclusions listed below applies:
>
> * * *
>
> 3. ***Bodily injury*** or property damage caused intentionally by or at the direction of an ***insured*** is not covered.

Policy, Exh. 1 to GEICO Mot. for Summ. J., ECF No. 22-1, at 4 of 15. The Defendants argue that "the preamble sentence limits the exclusionary effect to the insurer's duty to defend. Paragraph number three of the exclusions section suggests a coverage exclusion, but that doesn't square with the opening paragraph." Vialpando/Moore Defs.' Response to Mot. for Summ. J., ECF No. 23, at 7. I see no conflict or ambiguity. The exclusion states that a certain type of injury or property damage "is not covered." Because it is not covered, GEICO does not defend the suit for such damages. These phrases are entirely consistent and harmonious.

Next, the Vialpando/Moore Defendants argue that the phrase "caused intentionally by" the insured means that GEICO must prove that the Underlying Complaints allege that AJ "intentionally caused injury" to Vialpando and to Moore. Vialpando/Moore Defs.' Response to Mot. for Summ. J., ECF No. 23, at 8. In other words, the Defendants argue, it is not enough to show that AJ intentionally fired the shotgun, rather it must be shown that AJ had the specific intent to injure the victims. They argue that such allegations are absent

14

from the Underlying Complaints because "no one knows what was on A.J. Brown's mind at the time he fired." *Id.* at 10.

This argument is unavailing. As discussed above, there are adequate facts from which to infer that AJ intended to harm the passengers of the vehicle into which he fired a shotgun and under Colorado law this is sufficient to trigger an intentional conduct exclusion. *Johnson*, 816 P.2d at 939 (intentional conduct exclusion applied where "[defendant] knew that the person in front of him would sustain injuries as the result of his conduct, he intended to cause such injuries, and he had control over his conduct" even if he was mistaken as to the identity of the person); *Lopez,* 148 F.3d at 439; *Butler v. Behaeghe*, 37 Colo. App. 282, 288, 548 P.2d 934, 938 (1976) (exclusion for intentional conduct applies whenever some injury is intended, even though the injury that actually results differs in character or degree from the injury actually intended).

Finally, the Vialpando/Moore Defendants cite, without discussion, other cases involving car-to-car shootings. *State Farm Mut. Auto. Ins. v. McMillan*, 925 P.2d 785 (Colo. 1996); *Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007 (Colo. 1992); *State Farm Auto. Ins. v. Tye*, 931 P.2d 540 (Colo. App. 1996). However, these cases involve different types of insurance policies, specifically uninsured/underinsured motorist or no-fault (PIP) policies, not third party liability coverage, and concern the scope of an insuring clause. Therefore, the analyses in these cases have no bearing on the issues presented here. Because I conclude that the intentional act exclusion applies here and is not void under Colorado law, summary judgment should enter in favor of GEICO and against the Vialpando/Moore Defendants on GEICO's claim for a declaration regarding its coverage obligations.

Accordingly, it is ordered:

15

1. The Motion for Summary Judgment (ECF No. 10) filed by Defendants Stacey Moore, Caleb Moore, and Jeremy Vialpando is denied.

2. The Motion for Partial Summary Judgment (ECF No. 22) filed by Plaintiff Government Employees Insurance Company is granted. Summary judgment shall enter in favor of GEICO on its claim for declaratory judgment. I find that the intentional conduct exclusion in the Policy covering the insured Defendants David L. Brown and Amanda L. Brown applies and precludes coverage under the Policy for the claims asserted in the Moore Lawsuit and the Vialpando Lawsuit. Therefore, GEICO has no duty to defend or indemnify the Browns in the Moore Lawsuit and the Vialpando Lawsuit.

3. GEICO may have its costs.

DATED at Denver, Colorado, on September 22, 2010.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge